FILED
2012 Aug-08  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, National Association, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| NEW COVENANT FELLOWSHIP, CHURCH, INC., and PENTECOSTAL TEMPLE, LLC, d/b/a PENTECOSTAL TEMPLE CHURCH OF GOD IN CHRIST, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT REQUESTING APPOINTMENT OF RECEIVER, INJUNCTIVE RELIEF, AND OTHER EQUITABLE AND LEGAL RELIEF

Plaintiff  Wells Fargo Bank, National Association, successor-by-merger to Wachovia Bank, National Association, successor-by-merger to SouthTrust Bank ("Wells Fargo"), states as follows for its complaint against Defendants New Covenant Fellowship Church, Inc. ("New Covenant") and Pentecostal Temple, LLC, doing business as "Pentecostal Temple Church of God in Christ" ("Pentecostal Temple"):

1.    Wells Fargo is a national association with its principal place of business in San Francisco, California.

2.      New Covenant is a non-profit religious corporation organized pursuant to the laws of the State of Alabama.

3.      Pentecostal Temple is a limited liability company organized pursuant to the laws of the State of Alabama.  Upon information and belief, the members of Pentecostal Temple are individual residents of the State of Alabama.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is diversity between the parties and the amount in controversy exceeds $75,000.00.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## Facts

### The Loan

6.      On or about December 18, 2008, Wells Fargo made a loan to New Covenant in the original principal amount of $2,513,257.27 (the "Loan").

7.      The Loan is evidenced by, among other things, that certain Loan Agreement dated April 28, 2006 made by and between Wells Fargo and New Covenant (the "Loan Agreement").   A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1**.

2

8.    The Loan is evidenced by, among other things, that certain Promissory Note dated December 18, 2008, made by New Covenant payable to Wells Fargo in the original principal amount of $2,513,257.27 (renewing, extending, and/or modifying that certain Promissory Note dated April 28, 2006, in the original principal amount of $2,163,809.99 and that certain Promissory Note dated February 7, 2006, in the original principal amount of $50,000.00), (collectively, the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit 2.**

9.    By its terms, the Note matured and was fully due and payable on July 31, 2012.

10.    The Note is secured by among other things, that certain Mortgage, Assignment of Rents and Leases, and Security Agreement dated August 21, 1998, executed by New Covenant in favor of Wells Fargo, and recorded on August 21, 1998, in the Office of the Judge of Probate for Jefferson County, Alabama (the "Recording Office"), as Instrument No. 9810/9516, as amended by that certain Amendment to Mortgage, Assignment of Rents and Leases, and Security Agreement dated March 7, 2000, executed by New Covenant in favor of Wells Fargo and recorded in the Recording Office on March 7, 2000 as Instrument No. 200003/4104 (as assumed, amended, and modified from time to time, the "Mortgage"), pursuant to which New Covenant granted Wells Fargo a security

3

interest in the real property, personal property, and fixtures more particularly described therein (collectively, the "Collateral"), including without limitation, the real property, personal property, and fixtures more commonly known as the New Covenant Fellowship Church (collectively, the "Church") located at 5050 Pinson Valley Parkway, Birmingham, Alabama.  A true and correct copy of the Mortgage is attached hereto as **Exhibit 3.**

11.     Section 32 of the Mortgage, entitled "**Covenant Against Sale, Lease or Transfer**" provides:

> In the event of any change in the present ownership of all or any part of the Mortgaged Property or any interest therein, either by affirmative action, by operation of law or otherwise, or in the event any further encumbrance of the Mortgaged Property is created without [Wells Fargo's] prior written approval, [Wells Fargo] may, at its option, declare the indebtedness due and payable in full.

12.     The Mortgage also provides in part:

> In the event of default, [New Covenant] agrees that [Wells Fargo] shall be entitled without the necessity of a hearing or notice to [New Covenant] to the appointment of a receiver to take care of the [Church], to collect the rents, issues, and profits, and to keep the [Church] in good repair, and to apply the rents, issues and profits to the payment of the debts secured hereby.

13.     The Loan is also evidenced by that certain Extension Agreement dated June 10, 2010, executed by and between Wells Fargo and New Covenant (the "First Extension Agreement").

14.     The Loan is further evidenced by that certain Extension Agreement dated November 2, 2011, executed by and between Wells Fargo and New Covenant (the "Second Extension Agreement", and together with the First Extension Agreement, the "Extension Agreements").

15.     The Note, Mortgage, and Extension Agreements are referred to herein, collectively, as the "Loan Documents".

<u>The Transfer and Note Maturity</u>

16.     On or around June 15, 2012, New Covenant transferred title of the Collateral to Pentecostal Temple (the "Transfer") pursuant to that certain Statutory Warranty Deed, executed on June 15, 2012 and recorded in the Recording Office at Book LR201214, Page 19172 on June 15, 2012 (the "Deed").

17.     The Transfer was done without Wells Fargo's consent, without satisfying the Mortgage, and constituted a breach of Section 32 of the Mortgage.

18.     Wells Fargo did not and has not received any pay off of the Mortgage following the Transfer.

19.     As a result of the Transfer and New Covenant's breach of the Mortgage, Wells Fargo declared the Note to be in default pursuant to a Notice of Default letter (the "Default Letter") July 19, 2012.  A true and correct copy of the Default Letter is attached hereto as **Exhibit 4.**

B MHC01 1064140 v4
1039341-000578  08/08/2012

20.     In the Default Letter, Wells Fargo demanded that New Covenant take all action to regain title to the Church.

21.     The Note matured on July 31, 2012 (the "Maturity Date"). Upon the Maturity Date, all outstanding amounts under the Loan became due and owing in full.

22.     On July 19, 2012, Wells Fargo sent a letter to the Pentecostal Temple notifying it that the Transfer constituted a breach of the Loan Documents and that Wells Fargo did not agree to allow the Pentecostal Temple assume the Loan. A true and correct copy of this letter is attached as **Exhibit 5.**

23.     Upon information and belief, Pentecostal Temple paid no consideration to New Covenant for the Transfer.

24.     Pentecostal Temple never obtained Wells Fargo's consent to assume the Loan and Mortgage.

25.     Upon information and belief, New Covenant was insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

26.     Upon information and belief, the Transfer was made with the actual intent to hinder, delay or defraud Wells Fargo, as evidenced by the following:

     a. Wells Fargo's consent to the Transfer was never obtained;

     b. Wells Fargo was not notified that the Transfer had taken place until nearly a month after the Transfer had occurred;

6

c.  Wells Fargo was never provided with a copy of the Deed, but instead
    had to order a title search in order locate the Deed on its own
    initiative;

d.  Upon information and belief, New Covenant was aware of the
    impending maturity of the Loan and made the Transfer in anticipation
    of the maturity of the Loan;

e.  Upon information and belief, the Transfer resulted in the transfer of
    substantially all of New Covenant's assets, that is, the Collateral;

f.  Upon information and belief, Pentecostal Temple did not give
    reasonably equivalent value for the Transfer because Pentecostal
    Temple paid no consideration for the Transfer and never obtained
    Wells Fargo's consent to assume the Mortgage;

g.  Upon information and belief, New Covenant was insolvent at the time
    of the transfer or became insolvent as a result of the Transfer;

h.  Upon information and belief, Pentecostal Temple does not have
    insurance for the Collateral;

27.  On August 2, 2012, Wells Fargo met with representatives of New
Covenant and Pentecostal Temple and demanded that the Transfer be set aside and
that Pentecostal Temple deed the Collateral back to New Covenant.

7

28.    Pentecostal Temple has refused to set the Transfer aside and has refused to deed the Collateral back to New Covenant.

### The Outstanding Indebtedness

29.    As of August 3, 2012, the outstanding indebtedness due under the Note was $2,413,555.94.  This debt consisted of $2,400,721.36 in unpaid principal, $12,824.58 in accrued and unpaid interest, and a $10,000.00 fee due under the Second Extension Agreement.

30.    In addition, pursuant to the Loan Documents, New Covenant is obligated to pay Wells Fargo all costs it incurs in enforcing its rights in collecting the outstanding indebtedness under the Note, including but not limited to attorneys' fees, costs of collection, and court costs.

### Count I - Appointment of a Receiver

31.    Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

32.    Wells Fargo seeks appointment of a receiver to take control of the Church and to protect the interests of Wells Fargo in and to the Church.

33.    A receiver is a "neutral court officer appointed by the court to take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of undertaking any . . . appropriate action."  *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quoting

Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure, § 2981, at 5 (1973)).

34.    Upon the appointment of a receiver for property, real, personal or mixed, the territorial jurisdiction of the Court shall extend to any judicial district in which receivership property is found. *See* 28 U.S.C. § 1692.

35.    Wells Fargo is entitled to a receiver on two separate and independent grounds.

36.    First, Wells Fargo has a contractual right under the Mortgage for the appointment of a receiver for the Collateral.

37.    Second, Wells Fargo has a legal and equitable right to the appointment of a receiver for the Collateral pursuant to Ala. Code § 8-9A-7.

38.    Contemporaneously with this Complaint, Wells Fargo is filing a separate motion (the "Motion") requesting appointment of a receiver.   Wells Fargo's contractual, legal, and equitable arguments are set out more fully in that motion.

39.    Wells Fargo requests that the Court appoint Jesse Slaton of Warren, Averett, LLC ("Warren Averett") as the Receiver for the Collateral.  Wells Fargo has filed the Declaration of Mr. Slaton further describing Warren Averett's qualifications, ability, and willingness to serve as Receiver in this action.  Mr. Slaton's declaration is attached hereto as **Exhibit 6.**

**WHEREFORE**, Wells Fargo requests that the Court appoint a Receiver for the Collateral.

## **Count II - Breach of Note**

40.    Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

41.    New Covenant has failed to repay the amounts due and owing under the Note.

42.    As of August 3, 2012, New Covenant owed Wells Fargo, under the terms of the Note, the principal sum of $2,400,721.36, plus interest accrued on said indebtedness in the amount of $12,824.58, plus an extension fee in the amount of $10,000.00, plus costs of collection and reasonable attorneys' fees.

43.    Pursuant to the Note, Wells Fargo is entitled to collect from New Covenant its reasonable attorneys' fees and costs incurred in enforcing its rights under the Note.

44.    All conditions precedent to the bringing of this action have been performed by Wells Fargo or have otherwise occurred.

**WHEREFORE**, Wells Fargo hereby demands judgment against New Covenant for all amounts due and owing under the Note, in an amount not less than $2,413,555.94, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Note, and all attorneys' fees

and court costs incurred by Wells Fargo in enforcing its rights under the Note, and all other legal and equitable relief the court deems proper and just.

<div align="center"><u>**Count III - Fraudulent Conveyance**</u></div>

45.   Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

46.   Wells Fargo, as holder of the Loan, is a creditor of New Covenant.

47.   On June 15, 2012, New Covenant transferred the Collateral to Pentecostal Temple.

48.   Pentecostal Temple did not give reasonably equivalent value for the Transfer.

49.   New Covenant was insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

50.   The Transfer is a fraudulent transfer pursuant to Ala. Code § 8-9A-5(a).

51.   Alternatively, the Transfer was made with the actual intent to hinder, delay, or defraud Wells Fargo and is a fraudulent transfer pursuant to Ala. Code § 8-9A-4(a).

**WHEREFORE**, Wells Fargo hereby seeks:

A.   Avoidance of the Transfer;

B.   An injunction against further disposition by New Covenant and Pentecostal Temple of the Collateral;

<div align="center">11</div>

C.     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; and

D.     Any other relief the Court finds appropriate or just.

## Count IV-Declaratory Judgment

52.     Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

53.     New Covenant executed and delivered the Note and Mortgage to Wells Fargo, thereby conveying legal title to the Collateral to Wells Fargo.

54.     The Loan was not repaid at the Maturity Date, therefore Wells Fargo retains all right, title, and interest to the Collateral.

55.     Wells Fargo did not consent to the transfer of the Collateral to the Pentecostal Temple.

56.     Pentecostal Temple did not give reasonably equivalent value for the Transfer.

57.     Pentecostal Temple is currently in physical possession of the Collateral.

**WHEREFORE**, Wells Fargo requests this Court enter a declaratory judgment and declare:

A.     New Covenant has legal title to the Collateral;

B.     Pentecostal Temple has no right to possession of the Collateral; and

C.     Any such further relief to which Wells Fargo may be entitled.

12

B MHC01 1064140 v4
1039341-000578  08/08/2012

W. PATTON HAHN
MARIANNE H. COMBS
ERIC L. PRUITT
Attorneys for Wells Fargo Bank, N.A.


OF COUNSEL:
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North
1400 Wells Fargo Tower
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007

13

B MHC01 1064140 v4
1039341-000578  08/08/2012

**DEFENDANTS TO BE SERVED:**

New Covenant Fellowship Church
5050 Pinson Valley Parkway
Birmingham, AL 35215

Pentecostal Temple, LLC, d/b/a Pentecostal Temple Church of God in Christ
c/o Rev. Hosea Agee
309 20th Avenue NE
Birmingham, AL

Pentecostal Temple, LLC, d/b/a Pentecostal Temple Church of God in Christ
5050 Pinson Valley Parkway
Birmingham, AL 35215

B MHC01 1064140 v4
1039341-000578  08/08/2012

## VERIFICATION

I, _Robert H. Dunn_, _Sr. Vice President_ of Wells Fargo Bank, National Association ("Wells Fargo") and one of the custodians of the business records of Wells Fargo, having first being duly sworn, and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts state therein and upon my review of the records of Wells Fargo, that were kept as a regular practice of Wells Fargo in the course of Wells Fargo's regularly conducted business activity and that were made at or near the time of the occurrence of the matters set forth, the facts stated in the Verified Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of Wells Fargo.

WELLS FARGO BANK, NATIONAL ASSOCIATION

By: _Robert H. Dunn_

NAME Robert H. Dunn

TITLE Sr. Vice President

# EXHIBIT 1

# LOAN AGREEMENT

WACHOVIA BANK, National Association,
successor by merger to SOUTHTRUST BANK
Birmingham, Alabama 35203
(Hereinafter referred to as the "Bank")

NEW COVENANT FELLOWSHIP CHURCH,
a non-profit religious corporation
(also known as NEW COVENANT FELLOWSHIP
CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)
5050 Pinson Parkway
Birmingham, Alabama 35215
(Hereinafter referred to as "Borrower")

This Loan Agreement ("Agreement") is entered into April 28, 2006, by and between Bank and Borrower.

This Agreement applies to the loan or loans (individually and collectively, the "Loan") evidenced by one or more promissory notes dated April 28, 2006 or other notes subject hereto, as modified from time to time (whether one or more, the "Note") and all Loan Documents.  The terms "Loan Documents" and "Obligations," as used in this Agreement, are defined in the Note.

Relying upon the covenants, agreements, representations and warranties contained in this Agreement, Bank is willing to extend credit to Borrower upon the terms and subject to the conditions set forth herein, and Bank and Borrower agree as follows:

**REPRESENTATIONS.**  Borrower represents that from the date of this Agreement and until final payment in full of the Obligations:  **Accurate Information.**  All information now and hereafter furnished to Bank is and will be true, correct and complete in all material respects.  Any such information relating to Borrower's financial condition will accurately reflect Borrower's financial condition as of the date(s) thereof, (including all contingent liabilities of every type), and Borrower further represents that its financial condition has not changed materially or adversely since the date(s) of such documents.  **Authorization; Non-Contravention.**  The execution, delivery and performance by Borrower and any guarantor, as applicable, of this Agreement and other Loan Documents to which it is a party are within its power, have been duly authorized as may be required and, if necessary, by making appropriate filings with any governmental agency or unit and are the legal, binding, valid and enforceable obligations of Borrower and any guarantors; and do not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law, a violation of the organizational documents of Borrower or any guarantor, or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting Borrower or any guarantor, (ii) result in the creation or imposition of any lien (other than the lien(s) created by the Loan Documents) on any of Borrower's or any guarantor's assets, or (iii) give cause for the acceleration of any obligations of Borrower or any guarantor to any other creditor.  **Asset Ownership.**  Borrower has good and marketable title to all of the properties and assets reflected on the balance sheets and financial statements supplied Bank by Borrower, and all such properties and assets are free and clear of mortgages, security deeds, pledges, liens, charges, and all other encumbrances, except as otherwise disclosed to Bank by Borrower in writing and approved by Bank ("Permitted Liens").  To Borrower's knowledge, no default has occurred under any Permitted Liens and no claims or interests adverse to Borrower's present rights in its properties and assets have arisen.  **Discharge of Liens and Taxes.**  Borrower has duly filed, paid and/or discharged all taxes or other claims that may become a lien on any of its property or assets, except to the extent that such items are being appropriately contested in good faith and an adequate reserve for the payment thereof is being maintained.  **Sufficiency of Capital.**  Borrower is not, and after consummation of this Agreement and after giving effect to all indebtedness incurred and liens created by Borrower in connection with the Note and any other Loan Documents, will not be, insolvent within the meaning of 11 U.S.C. § 101, as in effect

from time to time. **Compliance with Laws.** Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all material respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC.  The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country to the extent subject to a sanctions program administered by OFAC.   **No Litigation.**  There are no pending or threatened suits, claims or demands against Borrower or any guarantor that have not been disclosed to Bank by Borrower in writing, and approved by Bank.   **Indemnity.** Borrower will indemnify Bank and its affiliates from and against any losses, liabilities, claims, damages, penalties or fines imposed upon, asserted or assessed against or incurred by Bank arising out of the inaccuracy or breach of any of the representations contained in this Agreement or any other Loan Documents.

**AFFIRMATIVE COVENANTS.**  Borrower agrees that from the date hereof and until final payment in full of the Obligations, unless Bank shall otherwise consent in writing, Borrower will: **Access to Books and Records.**  Allow Bank, or its agents, during normal business hours, access to the books, records and such other documents of Borrower as Bank shall reasonably require, and allow Bank, at Borrower's expense, to inspect, audit and examine the same and to make extracts therefrom and to make copies thereof. **Compliance with Other Agreements.**  Comply with all terms and conditions contained in this Agreement, and any other Loan Documents, and swap agreements, if applicable, as defined in the 11 U.S.C. § 101, as in effect from time to time. **Estoppel Certificate.**  Furnish, within 15 days after request by Bank, a written statement duly acknowledged of the amount due under the Loan and whether offsets or defenses exist against the Obligations. **Insurance.**  Maintain adequate insurance coverage with respect to its properties and business against loss or damage of the kinds and in the amounts customarily insured against by companies of established reputation engaged in the same or similar businesses including, without limitation, commercial general liability insurance, workers compensation insurance, and business interruption insurance; all acquired in such amounts and from such companies as Bank may reasonably require. **Maintain Properties.**  Maintain, preserve and keep its property in good repair, working order and condition, making all replacements, additions and improvements thereto necessary for the proper conduct of its business, unless prohibited by the Loan Documents. **Notice of Default and Other Notices.** (a) **Notice of Default.**  Furnish to Bank immediately upon becoming aware of the existence of any condition or event which constitutes a Default (as defined in the Loan Documents) or any event which, upon the giving of notice or lapse of time or both, may become a Default, written notice specifying the nature and period of existence thereof and the action which Borrower is taking or proposes to take with respect thereto.  (b) **Other Notices.**  Promptly notify Bank in writing of (i) any material adverse change in its financial condition or its business; (ii) any default under any material agreement, contract or other instrument to which it is a party or by which any of its properties are bound, or any acceleration of the maturity of any indebtedness owing by Borrower; (iii) any material adverse claim against or affecting Borrower or any part of its properties; (iv) the commencement of, and any material determination in, any litigation with any third party or any proceeding before any governmental agency or unit affecting Borrower; and (v) at least 30 days prior thereto, any change in Borrower's name or address as shown above, and/or any change in Borrower's structure. **Other Financial Information.**  Deliver promptly such other information regarding the operation, business affairs, and financial condition of

Borrower which Bank may reasonably request. **Payment of Debts.** Pay and discharge when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which Borrower in good faith disputes. **Reports and Proxies.** Deliver to Bank, promptly, a copy of all financial statements, reports, notices, and all regular or periodic reports required to be filed by Borrower with any governmental agency or authority.

**NEGATIVE COVENANTS.** Borrower agrees that from the date hereof and until final payment in full of the Obligations, unless Bank shall otherwise consent in writing, Borrower will not: **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Borrower or any guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of or debts due. **Retire or Repurchase Capital Stock.** Retire or otherwise acquire any of its capital stock.

**ANNUAL FINANCIAL STATEMENTS.** Borrower shall deliver to Bank, within 90 days after the close of each fiscal year, compiled financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. All such statements shall be compiled by an independent certified public accountant acceptable to Bank. Such statements shall be certified as to their correctness by a principal financial officer of Borrower.

**TAX RETURNS.** Borrower shall deliver to Bank, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, each of which shall be signed and certified by Borrower to be true and complete copies of such returns. In the event an extension is filed, Borrower shall deliver a copy of the extension within 30 days of filing.

**CONDITIONS PRECEDENT.** The obligations of Bank to make the loan and any advances pursuant to this Agreement are subject to the following conditions precedent: **Additional Documents.** Receipt by Bank of such additional supporting documents as Bank or its counsel may reasonably request.

**IN WITNESS WHEREOF**, Borrower and Bank, on the day and year first written above, have caused this Agreement to be executed under seal.

**NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)**

By: _____ (SEAL)
Lester L. Robinson, Pastor and Authorized Officer

**Wachovia Bank, National Association**

By: _____ (SEAL)
Jarvis Morehead, Vice President

Tracking #:  1061921833
CAT - Deal # 1061921833  Facility ID 1061921845

# EXHIBIT 2

# PROMISSORY NOTE

$2,513,257.27

December 18, 2008

New Covenant Fellowship Church,
a non-profit religious corporation
(also known as New Covenant Fellowship Church, Inc. and
New Covenant Fellowship, Inc.)
5050 Pinson Parkway
Birmingham, Alabama  35215
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Birmingham, Alabama  35203
Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America by mailing to the address specified hereinafter or wherever else Bank may specify, the sum of Two Million, Five Hundred Thirteen Thousand, Two Hundred Fifty-Seven and 27/100 Dollars ($2,513,257.27) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**CONSOLIDATION/INCREASE.**  This Promissory Note consolidates, renews, extends, increases, and/or modifies that certain Promissory Note dated April 28, 2006, evidencing an original principal amount of $2,163,809.99 and that certain Promissory Note dated February 7, 2006, evidencing an original principal amount of $50,000.00.  This Promissory Note is not a novation to the extent of the principal balance currently outstanding under the original promissory notes.

**TERM LOAN (WITH ADVANCES).**  Borrower may borrow and Bank may advance at its sole discretion under this Note from time to time (each an "Advance" and together the "Advances"), so long as the total principal balance outstanding at any one time does not exceed the principal amount stated on the face of this Note, subject to the limitations described in any loan agreement to which this Note is subject.  Bank's agreement to make Advances under this Note shall terminate if Borrower is in Default under this Note.  As of the date of each proposed Advance, Borrower shall be deemed to represent that each representation made in the Loan Documents is true as of such date.  Advances, once repaid, may not be reborrowed.  Notwithstanding anything to the contrary contained herein, Advances shall be solely for the purposes of paying Borrower's closing costs associated with this Note and Borrower hereby authorizes Bank to make such Advances without further notice to or consent of Borrower in order to satisfy such closing costs by direct payment of expenses related to the Consolidation Fee (defined below), legal expenses, appraisal fees, survey fees and title expenses.  All Advances are in Bank's discretion and no Advances shall be made for any purpose other than payment of closing costs.

**USE OF PROCEEDS.**  Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows:  debt consolidation.

**SECURITY.**  Borrower has granted or will grant Bank a security interest in the collateral described in the Loan Documents and such other security instruments as are executed from time to time, including, but not limited to, real and personal property collateral described in those certain security instruments, dated August 21, 1998 and March 7, 2000, as modified, restated or replaced from time to time.

536080 (Rev 30.0)
CNOTE
B ELP 810439 v1
1039341-000206 12/17/2008

ZPCOXXXXXXXXXX001   CDCNOTEXXX

Note.doc

FUNBATTY 12/17/2008

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the Bank's Prime Rate plus 1.0%, as that rate may change from time to time in accordance with changes in the Bank's Prime Rate ("Interest Rate"). "Bank's Prime Rate" means that rate announced by Bank from time to time as its prime rate and is one of several interest rate bases used by Bank.  Bank lends at rates both above and below Bank's Prime Rate, and Borrower acknowledges that Bank's Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Bank.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate").  The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).**  Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation").  The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period.  Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**REPAYMENT TERMS.**  This Note shall be payable in consecutive monthly payments of accrued interest only, commencing on January 28, 2009, and continuing on the same day of each month thereafter until full paid.  In any event, all principal and accrued interest shall be due and payable on December 28, 2009.

**CONSOLIDATION FEE.**  Borrower shall pay to Bank a consolidation fee equal to 0.50% of the face amount of this Note at closing.

**APPLICATION OF PAYMENTS.**  Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal.  If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.**  The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time).  **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed.  **Certain Other Terms.**  All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.**  If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days.  This late charge shall not apply to payments due at maturity or by acceleration hereof.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be

immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**ANNUAL FINANCIAL STATEMENTS.** Borrower shall deliver to Bank, within 60 days after the close of each fiscal year, compiled financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. All such statements shall be compiled by an independent certified public accountant acceptable to Bank. Such statements shall be certified as to their correctness by a principal financial officer of Borrower.

**PERIODIC FINANCIAL STATEMENTS.** Borrower shall deliver to Bank, within 20 days after the end of each month, unaudited management-prepared monthly financial statements including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all in reasonable detail and prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. Such statements shall be certified as to their correctness by a principal financial officer of Borrower and in each case, if audited statements are required, subject to audit and year-end adjustments.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**DEPOSIT ACCOUNTS.** Borrower shall establish and maintain all of its deposit accounts at Bank and concurrently herewith close all of its deposit accounts at any other financial institution.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and

interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sul juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/programs/index.shtml, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/index.shtml, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted in accordance with federal law and, except as preempted by federal law, the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state named in the Bank's address on the first page hereof. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Payments.** All payments shall be mailed to Bank at Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or other such address as provided by Bank in writing. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 7711 Plantation Road, Roanoke, VA 24019 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give

written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the address for payments set forth above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

**RELEASE OF BANK.** In consideration of the agreements of Bank contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Bank, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Bank and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Borrower or any of its successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions thereunder or related thereto. Borrower understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release. Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

New Covenant Fellowship Church, a non-profit religious corporation
(also known as New Covenant Fellowship Church, Inc. and
New Covenant Fellowship, Inc.)

By: _____ (SEAL)

Name: _MARK SINS_____ , Title: _SENIOR PASTOR_

535080 (Rev 30.0)

B ELP 810439 v1
1039341-000206 12/17/2008

Page 7

Note.doc
FUNBATTY 12/17/2008

## PROMISSORY NOTE

$2,163,809.99

April 28, 2006

NEW COVENANT FELLOWSHIP CHURCH,
a non-profit religious corporation
(also known as NEW COVENANT FELLOWSHIP
CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)
5050 Pinson Parkway
Birmingham, Alabama  35215
(Hereinafter referred to as "Borrower")

WACHOVIA BANK, National Association,
successor by merger to SOUTHTRUST BANK
Birmingham, Alabama  35203
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Two Million, One Hundred Sixty-Three Thousand, Eight Hundred Nine and 99/100 Dollars ($2,163,809.99) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**RENEWAL/MODIFICATION/INCREASE.**  This Promissory Note renews, extends, increases and/or modifies that certain Promissory Note dated August 8, 2004, evidencing an original principal amount of $2,288,695.84, which was a renewal, extension, and/or modification of a $2,424,950.06 Promissory Note dated November 29, 2001, which was a renewal, extension and/or modification of Borrower's then existing obligations to Bank. This Promissory Note is not a novation to the extent of the principal balance currently outstanding under the aforementioned Promissory Notes.

**LOAN AGREEMENT.**  This Note is subject to the provisions of that certain Loan Agreement between Bank and Borrower of even date herewith, as modified from time to time.

**USE OF PROCEEDS.**  Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: refinance existing debt.

**SECURITY.**  Borrower has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument dated August 21, 1998. March 7, 2000, and various other dates, those mortgages recorded in Instrument 9810/9516, 200003/4101, Real Volume 4133, page 491, and Real Volume 4286, page 113 in the Office of the Judge of Probate of Jefferson County, Alabama and those financing statements recorded with the Alabama Secretary of State.

**INTEREST RATE.**  Interest shall accrue on the unpaid principal balance of this Note during each Interest Period from the date hereof at a rate per annum equal to 1-month LIBOR plus 2.5% ("Interest Rate"). "Interest Period" means each period commencing on and including the date an interest payment is due as provided in the Repayment Terms paragraph and ending on but excluding the date the next interest payment is due, with the first interest period commencing on the date of closing. Upon determination by Bank of the Interest Rate for any Interest Period, such Interest Rate shall remain in effect for the entire Interest Period until redetermined for the next successive Interest Period.  "LIBOR" is the rate for U.S. dollar deposits with a maturity equal to the number of months specified above, as reported on Telerate

page 3750 as of 11:00 a.m., London time, on the second London business day before the relevant Interest Period begins (or if not so reported, then as determined by Bank from another recognized source or interbank quotation).

**INDEMNIFICATION.**  Borrower shall indemnify Bank against Bank's loss or expense as a consequence of (a) Borrower's failure to make any payment when due under this Note, (b) any payment, prepayment or conversion of any loan on a day other than the last day of the Interest Period, or (c) any failure to make a borrowing or conversion after giving notice thereof ("Indemnified Loss or Expense").  The amount of such Indemnified Loss or Expense shall be determined by Bank based upon the assumption that Bank funded 100% of that portion of the loan in the London interbank market.

**DEFAULT RATE.**  In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate").  The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).**  Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation").  The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period.  Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**REPAYMENT TERMS.**  This Note shall be due and payable as set forth hereinbelow.  From the date of this Note, accrued interest shall be payable in consecutive monthly payments payable on each of the dates listed in the column titled "Payment Due Date" in Schedule A attached hereto and made a part hereof ("Schedule A").  Principal shall be payable on each of the dates and in the amounts set forth in Schedule A.  All remaining principal and interest shall be due and payable on April 28, 2016.

**APPLICATION OF PAYMENTS.**  Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal.  If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.**  The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time).  **Obligations.**  The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed.  **Certain Other Terms.**  All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against

Borrower's accounts without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and construed under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's accounts with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as

otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address on the first page hereof. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA  24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA  24011 or such other address as Bank may specify in writing from time to time.  Notices to Bank must include the mail code.  In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity.  The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES.   EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **FINAL AGREEMENT.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.  There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be executed under seal.

**NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)**

By: _____(SEAL)
Lester L. Robinson, Pastor and Authorized Officer

Tracking #: 1061921833
CAT - Deal # 1061921833   Facility ID 1061921845

# PROMISSORY NOTE

$50,000.00

February 7, 2006

New Covenant Fellowship Church
5050 Pinson Parkway
Birmingham, Alabama 35215
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Birmingham, Alabama 35203
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Fifty Thousand and No/100 Dollars ($50,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**LINE OF CREDIT.** Borrower may borrow, repay and reborrow, and, upon the request of Borrower, Bank shall advance and readvance under this Note from time to time (each an "Advance" and together the "Advances"), so long as the total principal balance outstanding under this Note at any one time does not exceed the principal amount stated on the face of this Note, subject to the limitations described in any loan agreement to which this Note is subject. Bank's obligation to make Advances under this Note shall terminate if a demand for payment is made under this Note or if a Default (as defined in the other Loan Documents) under any Loan Document occurs or in any event, on the first anniversary hereof unless renewed or extended by Bank in writing upon such terms then satisfactory to Bank. As of the date of each proposed Advance, Borrower shall be deemed to represent that each representation made in the Loan Documents is true as of such date. **30-Day Payout.** During the term of the Note, Borrower agrees to pay down the outstanding balance to a maximum of $100.00 for 30 consecutive days annually.

If Borrower subscribes to Bank's cash management services and such services are applicable to this line of credit, the terms of such service shall control the manner in which funds are transferred between the applicable demand deposit account and the line of credit for credit or debit to the line of credit.

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: Building Improvements.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the Bank's Prime Rate plus .25%, as that rate may change from time to time in accordance with changes in the Bank's Prime Rate ("Interest Rate"). "Bank's Prime Rate" means that rate announced by Bank from time to time as its prime rate and is one of several interest rate bases used by Bank. Bank lends at rates both above and below Bank's Prime Rate, and Borrower acknowledges that Bank's Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Bank.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a default in the payment of Obligations occurs, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on March 8, 2006, and continuing on the same day of each month thereafter until fully paid. In any event, this Note shall be due and payable in full, including all principal and accrued interest, on demand.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. Upon the occurrence of a default in the payment of the Obligations or a Default (as defined in the other Loan Documents) under any other Loan Document, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEMAND NOTE.** This is a demand Note and all Obligations hereunder shall become immediately due and payable upon demand.   In addition, the Obligations hereunder shall automatically become immediately due and payable if Borrower or any guarantor or endorser of this Note commences or has commenced against it a bankruptcy or insolvency proceeding.

**REMEDIES.**  Upon the occurrence of a default in the payment of the Obligations or a Default (as defined in the other Loan Documents) under any other Loan Document, Bank may at any time thereafter, take the following actions:  **Bank Lien.**  Foreclose its security interest or lien against Borrower's accounts without notice.  **Cumulative.**  Exercise any rights and remedies as provided under the Note and the other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.**  Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition.  Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.**  No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank.  No waiver by Bank of any Default (as defined in the other Loan Documents) shall operate as a waiver of any other Default or the same Default on a future occasion.  Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind.  Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS.  Assignment.**  This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns.  Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank.  In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank.  Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void.  Any assignment shall not release Borrower from the Obligations.  **Organization; Powers.**  Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has

authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and construed under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's accounts with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address on the first page hereof. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated. **Fees and Taxes.** Borrower shall

promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES.   EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  For purposes of this section, account shall be understood to include loan accounts. **FINAL AGREEMENT.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be executed under seal.

New Covenant Fellowship Church

By: _____(SEAL)
    Lester L. Robinson, Pastor

Tracking #: 1046989088cm
CAT - Deal # 1046989088  Facility ID 146955167

# EXHIBIT 3

STATE OF ALABAMA
COUNTY OF JEFFERSON

9 8 1 0 / 9 5 1 6

# MORTGAGE,
## ASSIGNMENT OF RENTS AND LEASES,
## AND SECURITY AGREEMENT

THIS INDENTURE, (hereinafter "Mortgage") made this 21 day of August, 1998, between NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation, (also known as NEW COVENANT FELLOWSHIP, CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.) whose address is 5050 Pinson Valley Parkway, Birmingham, Alabama, 35215 (hereinafter jointly severally and collectively referred to as "Mortgagor") and SOUTHTRUST BANK, National Association whose address is P.O. Box 2554, Birmingham, Alabama, 35290, (ATTN: Business Banking) (hereinafter "Mortgagee").

[THIS MORTGAGE IS FILED AS, AND SHALL CONSTITUTE A FIXTURE FILING IN ACCORDANCE WITH ALABAMA CODE 7-9-402(6)]

# W I T N E S S E T H

WHEREAS, the said Mortgagor, is and will be indebted to Mortgagee by the terms of a Note of even date (hereinafter along with all renewals, extensions and modifications, "Note") in the principal sum of $1,500,000.00, payable in accordance with the terms of such Note, and all renewals, modifications, extensions and amendments thereto.

NOW THEREFORE, the undersigned Mortgagor in consideration of the premises and to secure the payment of the obligations and liabilities due and to become due pursuant to the terms of such Note of even date, this Mortgage, and any other agreement between Mortgagor and Mortgagee, or any other indebtedness (whether now existing or hereafter created) owed to Mortgagee by Mortgagor either directly or indirectly, absolutely or conditionally (hereinafter, collectively with the indebtedness evidenced by the Note and this Mortgage, "Debt"), and in compliance with all the stipulations herein contained, does hereby grant, bargain, sell, and convey unto Mortgagee, their successors, and assigns the following (hereinafter "Mortgaged Property"):

a) The Land situated in Jefferson County, Alabama and described on Exhibit "A" attached hereto and incorporated herein by this reference;

b) Together with all buildings, structures, equipment, machinery, and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, fittings, buildings materials, machinery, equipment, furniture and furnishings and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and used or intended to be used in connection with or with the operation of the Mortgaged Property, and the buildings, structures or other improvements located thereon, including all extensions, additions, improvements, betterments, renewals, substitutions, replacements and accessions to any of the foregoing, whether such fixtures, fittings, building materials, machinery, equipment, furniture, furnishings and personal property are actually located on or adjacent to the Land or not and whether in storage or otherwise wheresoever the same may be located;

c) Together with all easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, licenses, rights, titles, interest, privileges, liberties, tenements, hereditaments, in any way belonging, relating or appertaining to any of the Mortgaged Property, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of the Mortgagor of, in and to the same, including but not limited to: I) all rents, royalties, profits, issues and revenues of the Mortgaged Property from time to time accruing, whether under leases or tenancies now existing or hereafter created; and ll) all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Mortgaged Property or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the improvements thereon or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets. Mortgagee is hereby authorized on behalf of and in the name of Mortgagor to execute and deliver valid acquittance

for, and appeal from, any such judgments or awards. Mortgagee may apply all such sums or any part thereof so received, after the payment of all its expenses, including costs and attorney's fees, on any of the indebtedness secured hereby in such manner as it elects or, at its option, the entire amount or any part thereof so received may be released;

d) Together with all leases, written or oral, and all agreements for use or occupancy of any portion of the Mortgaged Property with respect to which the Mortgagor is the lessor, any and all extensions and renewals of said leases and agreements and any and all further leases or agreements, now existing or hereafter made, including subleases thereunder, upon or covering the use or occupancy of all or any part of the Mortgaged Property (all such leases, subleases, agreements and tenancies heretofore mentioned being hereinafter collectively referred to as the "Leases")

e) Together with any and all guaranties of the lessees' and any subleasees' performance under any of the Leases;

f) Together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues and profits now due or which may become due or to which the Mortgagor may now or shall hereafter (including during the period of redemption, if any) become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Mortgaged Property or any part thereof, including, but not limited to, minimum rents, additional rents, percentage rents, common area maintenance charges, parking charges, tax and insurance premium contributions, and liquidated damages following default, the premium payable by any lessee upon the exercise of any cancellation privilege provided for in any of the Leases, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Mortgaged Property, together with any and all rights and claims of any kind that the Mortgagor may have against any such lessee under the Leases or against any subtenants or occupants of the Mortgaged Property , rights and claims in this paragraph described being hereinafter referred to as the "Rents"); provided, however, so long as no Event of Default has occurred, the Mortgagor shall have the right under a license granted hereby toe and retain the Rents (but not prior to accrual thereof);

g) Together with any award, dividend or other payment made hereafter to the Mortgagor in any court procedure involving any of the lessees under the Leases in any bankruptcy, insolvency or reorganization proceedings in any state or federal court and any and all payments made by lessees in lieu of rent. Mortgagor hereby appoints the Mortgagee as the Mortgagor's irrevocable attorney in fact to appear in any action and/or to collect any such award, dividend, or other payment;

h) Together with any awards hereafter made for any taking of or injury to said Mortgaged Property through eminent domain or otherwise, including awards or damages for change of grade, and also any return premiums or other payments upon any insurance at any time provided for the benefits of Mortgagee, all of which awards, damages, premiums, and payments are hereby assigned to Mortgagee and may be at any time collected by it; and

I) All cash and non-cash proceeds and all products of any of the foregoing items or types of property described above, including, but not limited to, all insurance, contract and tort proceeds and claims.

TO HAVE AND TO HOLD the said Mortgaged Property, and every part thereof, unto Mortgagee, its successors, and assigns, forever, subject, however, to the terms and conditions herein.

PROVIDED HOWEVER, if the indebtedness secured by this Mortgage is paid, and Mortgagee, its successors, and assigns is reimbursed for any amounts it may have expended pursuant to the authorization of this Mortgage, including without limitation, sums spent in payment of taxes, assessments, insurance, or other liens and interest thereon, and Mortgagor shall have done and performed all other acts and things herein agreed to be done, then this conveyance shall be null and void; otherwise it shall remain in full force and effect.

## GENERAL PROVISIONS

Mortgagor further represents, warrants, covenants and agrees with Mortgagee as follows:

1. **Performance of Mortgage, Note and Loan Documents.** Mortgagor shall perform and comply with all provisions hereof, of the Note, and of the documents executed in connection herewith (hereinafter "Loan Documents"), and shall duly and punctually pay all indebtedness secured hereby, whether presently existing or hereafter incurred, with interest thereon, and any and every extension, renewal and modification thereof, or of any part thereof, and all interest on all such extensions, renewals, and modifications.

2

2. **Warranties of Title.** Mortgagor covenants with Mortgagee that it is lawfully seized in fee simple of the Mortgaged Property and has full power and right to sell and convey the same as aforesaid, that the said Mortgaged Property is free of all encumbrances except as set out in Exhibit "A", that the Mortgagee hereunder and its successors and assigns shall quietly enjoy and possess the same; and Mortgagor will warrant and forever defend the title to said Mortgaged Property unto Mortgagee, its successors, and assigns, against lawful claims of all persons.

3. **Future Advances and Other Debts.** It is the Mortgagor's expressed intention that the continuing grant of the Mortgaged Property by this Mortgage shall secure the payment and performance of all of the indebtedness of Mortgagor to Mortgagee, whether now existing or hereinafter incurred by future advances; whether such indebtedness be absolute, direct, contingent or otherwise; and whether such indebtedness was contemplated by the parties at the time of the executing of this Mortgage.

4. **After-Acquired Property.** Without limitation to the generality of the other provisions of this Mortgage, it is hereby expressly covenanted, agreed and acknowledged that the lien and rights herein automatically will attach to any further, greater, additional, or different estate, rights, titles or interests in or to any of the Mortgaged Property at any time acquired by the Mortgagor by whatsoever means, including that in the event that the Mortgagor is the owner of an estate or interest in the Mortgaged Property or any part thereof (such, as for example, as the lessee or tenant) other than as the fee simple owner thereof, and prior to the satisfaction of record of this Mortgage the Mortgagor obtains or otherwise acquires such fee simple or other estate, then such further, greater, additional, or different estate in the Mortgaged Property, or a part thereof, shall automatically, and without any further action or filing or recording on the part of the Mortgagor or the Mortgagee or any other person or entity, be and become subject to this Mortgage and the lien hereof. In consideration of Mortgagee making the loan as evidenced by the Note, and to secure the Debt, Mortgagee hereby grants, bargains, sells and conveys to Mortgagee, on the same terms as set forth in this Mortgage and intended to be a part hereof, all such after-acquired property and estates.

5. **Taxes, Utilities, and Liens.** The Mortgagor shall pay promptly, when and as due, and, if requested, will exhibit promptly to the Mortgagee receipts for the payment of all taxes, assessments, water rates, utility charges, dues, charges, fines, penalties, costs and other expenses incurred, and impositions of every nature whatsoever imposed, levied or assessed or to be imposed, levied or assessed upon or against the Mortgaged Property or any part thereof, or upon the revenues, rents, issues and profits of the Mortgaged Property or arising in respect to the occupancy, use or possession thereof, or upon the interest of the Mortgagee in the Mortgaged Property, or any charge which, if unpaid, would become a lien or charge upon the Mortgaged Property.

Such taxes, assessments and other charges shall not be permitted to become delinquent or to take priority over the lien of this Mortgage.

In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of mortgages or debts secured by mortgages or the manner of collecting taxes, then Mortgagor shall immediately pay any increased taxes if allowed by law, and if Mortgagor fails to pay such additional taxes, or if Mortgagor is prohibited from paying such taxes, or if Mortgagee in any way is adversely affected by such law, order, rule, or regulation, then in any such events, all indebtedness secured by this Mortgage and all interest accrued thereon shall without notice become due and payable forthwith at the option of the Mortgagee.

6. **Monthly Tax Deposit.** If Mortgagee requires, Mortgagor shall pay on the first day of each month one-twelfth (1/12) of the yearly taxes on the Mortgaged Property, as estimated by Mortgagee, in addition to each regular installment of principal and interest. Such sums shall not draw interest and shall not be, nor be deemed to be, trust funds, but may be commingled with Mortgagee's general funds. Mortgagor agrees to pay Mortgagee the amount of any deficiency necessary to enable Mortgagee to pay such taxes when due. If an Event of Default shall occur under this Mortgage or under the Note, any of the Loan Documents, or any of the other indebtedness instruments, such amount may be applied by Mortgagee to the reduction of the indebtedness secured hereby in any manner selected by Mortgagee. However, unless otherwise agreed by Mortgagee in writing, no application of tax deposits to the Note, to other indebtedness, or to other obligations secured hereby, shall delay, reduce, alter or otherwise affect any regularly scheduled payment with respect to the Note, the other indebtedness, or any such other obligations.

7. **Failure to Insure; Nonpayment of Liens or Assessments.** If Mortgagor shall fail to insure said property as hereinabove provided, or to pay all or any part of the taxes or assessments levied, accrued, or assessed upon or against interest of Mortgagee or Mortgagor, or fails to pay immediately and discharge any and all liens, debts, and/or charges which might

3

become liens superior to the lien of this Mortgage, then Mortgagee may, at its option, insure said property and/or pay said taxes, assessments, debts, liens, and/or charges. Any money which Mortgagee shall have so paid or become obligated to pay shall constitute a debt to Mortgagee additional to the debt hereby specifically secured, shall be secured by this Mortgage, shall bear the highest legal interest from date paid or incurred at the rate set forth in the Note plus two percentage points (2%), and, at the option of the Mortgagee, shall be immediately due and payable.

8.    **Hazard Insurance.**  For the benefit of Mortgagee, Mortgagor will constantly keep in force fire and extended coverage insurance policies with respect to any and all buildings or equipment on said Mortgaged Property. Such insurance will be provided in such a manner by such companies and for such amounts as may be required by Mortgagee, with Mortgagee shown as Mortgagee and Loss Payee under a standard New York non-contributory Mortgagee/Loss Payee endorsement making losses payable to Mortgagee.

Mortgagor covenants to pay the premium on such policy or policies when due, to deliver to the Mortgagee upon its request the official receipts for such premium payments, and upon issuance of such policies to promptly deposit them with the Mortgagee as collateral security for the payment of the indebtedness hereby secured.

Mortgagee is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies on the Mortgaged Property, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to the Mortgagee instead of to the Mortgagor and Mortgagee jointly. After deducting from said insurance proceeds any expenses incurred by Mortgagee in the collection or handling of said funds, Mortgagee may apply the net proceeds, at its option, either toward repairing or restoring the improvements on the Mortgaged Property, or as a credit on any portion of the Mortgagor's Debt selected by Mortgagee, whether then matured or to mature in the future, or at the option of the Mortgagee, such sums either wholly or in part may be used to repair such improvements, or to build new improvements in their place or for any other purpose and in a manner satisfactory to the Mortgagee, all without affecting the lien of this Mortgage for the full amount secured hereby before such payment took place. Mortgagee shall not be liable to Mortgagor or otherwise responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure.

Mortgagor further covenants that all insurance policies will contain a clause that prohibits them from being canceled upon less than twenty (20) days' notice to Mortgagee, and to deliver to the Mortgagee at least twenty (20) days before the expiration of all such insurance police payment of the premium thereon.

Mortgagor hereby transfers, assigns, sets over, and delivers to Mortgagee the fire and other insurance policies covering said property and any and all renewals thereof, the premiums on which have been or shall be paid by Mortgagor, and further agrees that all such insurance and insurance policies shall be held by Mortgagee as a part of the security for said indebtedness, and shall pass to, and become the property of, the purchaser at any foreclosure sale hereunder, without the necessity of specifically describing said insurance or insurance policies in the foreclosure notice, sale, deed, or other proceedings in consummation of such foreclosure.

If the Mortgagor fails to keep said property insured as above specified, then Mortgagee may, at its option, insure said property for its insurable value against loss by fire and other hazards, casualties, and contingencies, for its own benefit, and any amount which may be expended for premiums on such insurance policies shall be secured by the lien of this mortgage and bear interest from the date of payment by Mortgagee at the rate set forth in the Note plus two percentage points (2%).

If Mortgagee requires, Mortgagor shall pay on the first day of each month one-twelfth (1/12) of the yearly insurance premium on the Mortgaged Property, as estimated by Mortgagee, in addition to each regular installment of principal and interest. Such sums shall not draw interest and shall not be, nor be deemed to be, trust funds, but may be commingled with Mortgagee's general funds. Mortgagor agrees to pay Mortgagee the amount of any deficiency necessary to enable Mortgagee to pay such insurance premiums when due. If an Event of Default shall occur under this Mortgage or under the Note, any of the Loan Documents, or any of the other indebtedness instruments, such amount may be applied by Mortgagee to the reduction of the indebtedness secured hereby in any manner selected by Mortgagee. However, unless otherwise agreed by Mortgagee in writing, no application of insurance premiums to the Note, to other indebtedness, or to other obligations secured hereby, shall delay, reduce, alter or otherwise affect any regularly scheduled payment with respect to the Note, the other indebtedness, or any such other obligations.

4

Mortgagor agrees to give Mortgagee notice in writing of any damage to the Mortgaged Property caused by fire or other casualty within ten (10) days after the occurrence of any such damage.

9.   **Covenant Against Waste; Care of the Property**.  The Mortgaged Property and the improvements thereon shall be kept in good condition and no waste committed or permitted thereon, reasonable natural wear and tear excepted. No building or other improvement on the Mortgaged Property shall be structurally altered, removed or demolished, without the Mortgagee's prior written consent, nor shall any fixture or chattel covered by the Mortgage and adapted to the proper use and enjoyment of the Mortgaged Property be removed at any time without like consent. In the event of any breach of this covenant the Mortgagee may, in addition to any other rights or remedies, at any time thereafter, declare the whole of the indebtedness secured by this Mortgage immediately due and payable.

Mortgagee is hereby authorized to enter upon and inspect the Mortgaged Property, and to inspect the Mortgagor's or Mortgagor's agent's records with respect to the ownership, use, management and operation of the Mortgaged Property, at any time during normal business hours.

10.   **Mechanics' and Materialmen's Liens Prohibited**.  Any lien which may be filed under the provisions of the statutes of Alabama, relating to the liens of mechanics and materialmen, shall be promptly paid and discharged by Mortgagor and shall not be permitted to take priority over the lien of this Mortgage, provided that Mortgagor, upon first furnishing to Mortgagee reasonable security for the payment of all liability, costs, and expenses of the litigation, may in good faith contest, at Mortgagor's expense, the validity of any such lien or liens. In those instances where Mortgagee's title policy protects it against such lien or liens such title policy shall be deemed to be sufficient security. Determination of whether said title policy protects Mortgagee shall be made solely by Mortgagee and shall be binding upon Mortgagor.

11.   **Assignment of Condemnation Proceeds**.  Notwithstanding that the assignment of awards hereinabove referred to shall be deemed to be self-executing, Mortgagor, after the allowance of a condemnation claim or award, and the ascertainment of the amount due thereon, and the issuing of a warrant by the condemnor for the payment thereof, shall execute, at Mortgagee's request, and forthwith deliver to Mortgagee, a valid assignment in recordable form, assigning all of such condemnation claims, awards or damages to Mortgagee, but not in excess of an amount sufficient to pay, satisfy, and discharge the principal sum of this Mortgage and any advances made by Mortgagee as herein provided then remaining unpaid, with interest thereon at the rate specified in the Note which this Mortgage secures, to the date of payment, whether such remaining principal sum is then due or not by the terms of said Note or of this Mortgage.

12.   **Waiver of Exemption**.  Mortgagor waives all rights of exemption pertaining to real or personal property as to any Debt secured by or that may be secured by this Mortgage, and Mortgagor waives the benefit of any statute regulating the obtaining of a deficiency judgment or requiring that the value of the Mortgaged Property be set off against any part of the Debt secured hereby.

13.   **Governmental Compliance**.  Mortgagor shall comply with all laws, governmental standards, and regulations applicable to Mortgagor or the Mortgaged Property with regards to occupational safety, hazardous waste and materials, and environmental matters. Mortgagor shall promptly notify the Mortgagee of its receipt of any nature of a violation by Mortgagor or the Mortgaged Property of any such law, standard, or regulation. Mortgagor represent and warrant to Mortgagee that there is not now, or will there be in the future, any asbestos or other harmful or regulated substances in the Mortgaged Property or on the Mortgaged Property or pending claims relating thereto. Mortgagor shall indemnify and hold Mortgagee harmless for any and all loss incurred by Mortgagee as a result of Mortgagor's breach of this warranty and representation. This indemnification shall survive the payment of the Note, the exercise of any right or remedy under the Note or any Loan Document, any subsequent sale or transfer of the Mortgaged Property, and all similar or related events or occurrences.

## ASSIGNMENT OF LEASES AND RENTS

14.   **Assignment of Rents and Leases**.  In consideration of Mortgagee's making the loan evidenced by the Note and for other good and valuable consideration, and to secure the prompt payment of the Debt, with the interest thereon, and further to secure the performance of the covenants, conditions and agreements hereinafter set forth and set forth in the Loan Documents, Mortgagor does hereby sell, assign and transfer unto the Mortgagee all Leases and subleases of all or part of the Mortgaged Property, and all Rents. It is the intention of the parties that this assignment of rents and leases shall be a present assignment, and to hereby establish an absolute transfer and assignment (but not a delegation of duties) of all the said leases, subleases and agreements, and all that avails thereof, to the Mortgagee.

5

15. Covenants Relating to Rents and Leases. The Mortgagor covenants and agrees that the Mortgagor shall: (a) observe, perform and discharge all obligations, covenants, and warranties provided for under the terms of the Leases to be kept, observed and performed by the Mortgagor, and shall give prompt notice to the Mortgagee in the event the Mortgagor fails to observe, perform, and discharge the same; (b) enforce or secure in the name of the Mortgagee the performance of each and every obligation, term, covenant, condition and agreement to be performed by any lessee under the terms of the Leases; (c) appear in and defend any action or proceeding arising under, occurring out of, or in any manner connected with the Leases or the obligations, duties or liabilities of the Mortgagor and any lessee thereunder, and, upon request by the Mortgagee to do so in the name and on behalf of the Mortgagee but at the expense of the Mortgagor, and to pay all costs and expenses of the Mortgagee, including reasonable attorneys' fees, in any action or proceeding in which the Mortgagee may appear; (d) not receive or collect any Rents from any present or future lessee of the Mortgaged Property or any of the Improvements, or any part thereof, for a period of more than one month in advance, or pledge, transfer, mortgage or otherwise encumber or assign future payments of the Rents; (e) not waive, excuse, condone, discount, set off, compromise, or in any manner release or discharge any lessee of the Mortgaged Property of and from any obligations, covenants, conditions and agreements by said lessee to be kept, observed and performed, including the obligation to pay rent in the manner and at the place and time specified in any Lease; (f) not cancel, terminate or consent to any surrender of any Lease, or modify or in any way alter the terms thereof without, in each such instance, the prior written consent of the Mortgagee; (g) upon Mortgagee's request, furnish the Mortgagee with the name and addre thtion of the premises covered thereby, and a copy of such Lease; and (h) execute all such further assignments of such Lease and the Rents therefrom as the Mortgagee may require.

16. Mortgagee Shall Have No Obligations with Respect to Leases. The Mortgagee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any leases, subleases or rental agreements relating to the Mortgaged Property, and the Mortgagor shall and does hereby agree to indemnify and hold the Mortgagee harmless of and from any and all liability, loss or damage which it may or might incur under any leases, subleases or agreements or under or by reason of the assignment thereof and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said leases, sublease or agreements. Should the Mortgagee incur any such liability, loss or damage, under said leases or under or by reason of the assignment thereof, or in the defense of any claims or demands asserted against the Mortgagee in connection with any one or more said leases, subleases or agreements, the Mortgagor agrees to reimburse the Mortgagee for the amount thereof, including costs, expenses and reasonable attorneys' fees, all of which shall be secured by the assignment hereunder and by this Mortgage.

Nothing herein contained shall be construed as constituting Mortgagee as "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by the Mortgagee pursuant to the provisions hereinafter contained. In the exercise of the powers herein granted to Mortgagee, no liability shall be asserted or enforced against the Mortgagee, all such liability being expressly waived and released by Mortgagor.

## SECURITY AGREEMENT

17. Grant of Security Interest. Mortgagor (the "Debtor" for Uniform Commercial Code purposes), in consideration of Mortgagee (the "Secured Party" for Uniform Commercial Code purposes) making the loan evidenced by the Note, and for other good and valuable consideration, and to secure the prompt payment of the Debt, with interest thereon, and further to secure the performance of the covenants, conditions and agreements hereinafter set forth and set forth in the Note and in the Loan Documents, does hereby grant to Mortgagee title to and a security interest in such portions of the Mortgaged Property (the "Collateral"), the security interest in and disposition of which is governed by the Alabama Uniform Commercial Code (the "UCC").

18. Financing Statements. Mortgagor warrants that no financing statement covering any Collateral or any proceeds thereof is on file in any public office, except for financing statements specifically set forth on Exhibit "A" attached hereto, and except for the financing statements executed by Mortgagor and Mortgagee. This Mortgage shall constitute a financing statement under the UCC. Further, at Mortgagee's request, Mortgagor will join with Mortgagee in executing such additional financing statements pursuant to the UCC in form satisfactory to Mortgagee, and will pay the cost of filing the same in all public offices wherever filing is deemed by the Mortgagee to be necessary or desirable. Mortgagor authorizes Mortgagee to prepare and to file financing statements covering the Collateral signed only by the Mortgagee and to sign the Mortgagor's signature to such financing statements in jurisdictions where Mortgagor's signature is required. Mortgagor promises to pay

the Mortgagee the fees incurred in filing the financing statements, including but not limited to mortgage recording taxes payable in connection with filings on fixtures, which fees shall become part of the Indebtedness secured hereby.

If certificates of title are issued or outstanding with respect to any of the Collateral, the Mortgagor shall cause Mortgagee's name to be properly noted thereon.

19.   **Representations of Mortgagor.**  Mortgagor represents that the Collateral is used or bought primarily for business purposes and will be kept at the Mortgagor's address stated herein. Mortgagor will promptly notify Mortgagee of any change in the location of the Collateral. Except for transactions in the ordinary course of Mortgagor's business, Mortgagor, its agents or employees will not remove the Collateral from said location without Mortgagee's prior written approval. Mortgagor further represents that its name has always been as set forth on the first page of this Mortgage, except as otherwise disclosed in writing to Mortgagee. Mortgagor shall promptly advise Mortgagee in writing of any change in Mortgagor's name.

## MORTGAGEE'S RIGHTS AND REMEDIES UPON DEFAULT

20.   **Events of Default.**  The Mortgagor shall be deemed in default hereunder upon the occurrence of any of the following events ("Events of Default"):  (a) If Mortgagor shall fail to pay, or cause to be paid, the whole or any portion of the principal sum, or any installment of interest thereon, or any other sum the payment of which is hereby secured, as they or any of them mature, either by lapse of time or otherwise, in accordance with the agreements and covenants herein contained; (b) if the Mortgagor defaults in the payment of any mechanic's lien, materialmen's lien, insurance premiums, taxes, or assessments now, or which may hereafter be levied against, or which may become a lien on, said property, (c) if the Mortgagor defaults in any of the covenants, conditions, and agreements herein contained; (d) if Mortgagor or any of Mortgagor's guarantors become insolvent or bankrupt; (e) if a receiver of Mortgagor's or any of Mortgagor's guarantors' property be appointed; (f) if Mortgagor intentionally damages or attempts to remove any improvement upon said Mortgaged Property; (g) if all or any part of the Mortgaged Property is condemned; (h) if it is discovered after the execution and delivery of this instrument that there is a defect in the title to or a lien or encumbrance of any nature on said property prior to the lien hereof, or if there is an error or defect to any agreement between Mortgagor and Mortgagee for which this Mortgage is security or this instrument or in the execution or the acknowledgement thereof, or if a homestead claim is set up to said property or any part thereof adverse to this Mortgage, and if the said Mortgagor shall fail for thirty (30) days after demand by the Mortgagee, or other holder or holders of said indebtedness, to correct such defects in the title or to remove any such lien or encumbrance or homestead claim, or to correct any error in said agreements or this instrument or its execution; or (I) any law is passed imposing, or authorizing the impositioror authorizing the deduction of any such tax from the principal of, or interest on, the Debt, or by virtue of which any tax, lien or assessment upon the Mortgaged Property shall be chargeable against the owner of this Mortgage.

21.   **Acceleration of Debt.**  Upon the occurrence of an Event of Default or at any time thereafter, the Mortgagee, or other holder or holders of the indebtedness secured by this Mortgage, or any part thereof, shall have the option or right, without notice or demand, to declare all of said indebtedness then remaining unpaid immediately due and payable, and may immediately or at any time thereafter foreclose this Mortgage by the power of sale hereunder described or by suit, as such Mortgagee, or other holder or holders of said indebtedness, may elect. Upon such acceleration of the Debt, the Mortgagor covenants to pay, in addition to all other amounts due, interest on the Debt until paid at the rate set forth in said Note.

22.   **Access to Property; Foreclosure Sale.**  Upon the occurrence of an Event of Default or at any time thereafter, in addition to all other rights herein conferred on the Mortgagee, the holder of the debt hereby secured shall have the right to enter upon and take possession of the Mortgaged Property either after or without taking such possession of the same, sell the Mortgaged Property at public outcry, in front of the courthouse door of the county wherein said Mortgaged Property is located, to the highest bidder for cash, either in person or by auctioneer, after first giving twenty-one (21) days' notice of the time, place, and terms of such sale by publication once a week for three (3) successive weeks in some newspaper published in said county, and, upon the payment of the purchase money, the Mortgagee or any person conducting said sale for it is authorized and empowered to execute to the purchaser at said sale a deed to the property so purchased in the name and on behalf of Mortgagor. The certificate of the holder of the mortgage indebtedness, appointing said auctioneer to make such sale, shall be prima facie evidence of his authority in the premises. Alternatively, the equity of redemption from this Mortgage may be foreclosed by suit in any court of competent jurisdiction as now provided by law in the case of past due mortgages. The Mortgagee, or the then holder of the indebtedness hereby secured, may bid at any such sale and become the purchaser of said property if the highest bidder therefor.

7

The proceeds of any such sale shall be applied (a) to the expenses incurred in making the sale, preparing the Mortgaged Property for sale, and in all prior efforts to effect collection of the indebtedness secured hereby, including a reasonable attorney's fee, or reasonable attorneys' fees, for such services as may be, or have been necessary in any one or more of the foreclosure of this Mortgage, of the collection of said indebtedness, and of the pursuit of any efforts theretofore directed to that end, including, but without limitation to, the defense of any proceedings instituted by the Mortgagor or anyone liable for said indebtedness or interest in the Mortgaged Property to prevent or delay, by any means, the exercise of said power of sale on the foreclosure of this Mortgage; (b) to the payment of whatever sum or sums Mortgagee may have paid out or become liable to pay, in carrying out the provisions of this Mortgage, together with interest thereon; (c) to the payment and satisfaction of said principal indebtedness and interest secured by this Mortgage thereon to the laid over to Mortgagor, or Mortgagor's successors or assigns. In any event, the purchaser under any foreclosure sale, as provided herein, shall be under no obligation to see to the proper application of the purchase money.

23.     **Rents and Leases**. Upon the occurrence of an Event of Default or at any time thereafter, the Mortgagee, at its option, shall have the right, power and authority to exercise and enforce any or all of the following rights and remedies with respect to the Rents and Leases: (a) to terminate automatically, without the necessity of taking any action, the license granted to the Mortgagor herein to collect the Rents; (b) to without taking possession, in the Mortgagee's own name to demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances therefor, and after deducting all necessary and reasonable costs and expenses of collection, including reasonable attorneys' fees, to apply the net proceeds thereof to the Debt in such order and amounts as the Mortgagee may choose, or to hold the same in a reserve as security for the Debt; ° without regard to the adequacy of the security, with or without any action or proceeding, through any person or by agent, or by a receiver to be appointed by court, to enter upon, take possession of, manage and operate the Mortgaged Property or any part thereof for the account of the Mortgagor, to make, modify, enforce, cancel or accept surrender of any Lease, remove and evict any lessee or sublessee, increase or reduce rents, decorate, clean and make repairs, perform remediation and otherwise do any act or incur any cost or expenses the Mortgagee shall deem proper to protect the security hereof, as fully and to the same extent as the Mortgagor could do if in possession, and in such event to apply any funds so collected to the operation and management of the Mortgaged Property (including payment of reasonable management, brokerage and attorneys' fees) and payment of the Debt in such order and amounts as the Mortgagee may choose (or hold the same in reserve as security for the Debt); and (d) to take whatever legal proceedings may appear necessary or desirable to enforce any obligation or covenant or a Rents and application thereof (or holding thereof in reserve) as aforesaid or the entry upon and taking possession of the Property or both shall not cure or waive any default or waive, modify or affect any notice of default under this mortgage, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by the Mortgagee, once exercised, shall continue for so long as the Mortgagee shall elect, notwithstanding that the collection and application aforesaid of the Rents may have cured the original default. If the Mortgagee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent default.

24.     **No Waiver of Event of Default**. The collection of the rents and application thereof as aforesaid or the entry upon and taking possession of the Mortgaged Property or both shall not cure or waive any default or waive, modify or affect any notice of default under this Mortgage, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by the Mortgagee, once exercised, shall continue for so long as the Mortgagee shall elect, notwithstanding that the collection and application of the rents may have cured the original default. If the Mortgagee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent default.

25.     **Judicial Proceedings; Right to Receiver**. Upon the occurrence of an Event of Default or at any time thereafter, the Mortgagee, in lieu of, or in addition to, exercising the power of sale described above, may proceed by suit to foreclose its lien on, security interest in, and assignment of the Mortgaged Property, to sue the Mortgagor for damages on account of or arising out of said default or breach, or for specific performance of any provision contained herein, or to enforce any other appropriate legal or equitable right or remedy. In the event of default, the Mortgagor agrees that the Mortgagee shall be entitled without the necessity of a hearing or notice to Mortgagor to the appointment of a receiver to take care of the Mortgaged Property, to collect the rents, issues, and profits, and to keep the Mortgaged Property in good repair, and to apply the rents, issues and profits to the payment of the debts secured hereby.

26.     **Rights of a Secured Party**. Upon the occurrence of an Event of Default, the Mortgagee, in addition to any and all remedies it may have or exercise under this Mortgage, the Note, the Loan Documents, the other Debt instruments or under applicable law, may immediately and without demand, exercise any and all of the rights of a secured party upon default under

8

the Uniform Commercial Code, all of which shall be cumulative. Such rights shall include, without limitation: (a) The right to take possession of the Collateral without judicial process and to enter upon any premises where the Collateral may be located for the purposes of taking possession of, securing, removing, and/or disposing of the Collateral without interference from Mortgagor and without any liability for rent, storage, utilities, or other sums; (b) The right to sell, lease, or otherwise dispose of any or all of the Collateral, whether in its then condition or after further processing or preparation, at public or private sale; and unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Mortgagee shall give to Mortgagor at least ten (10) days' prior notice of the time and place of any public sale of the Collateral or of the time after which any private sale or other intended disposition of the Collateral is to be made, all of which Mortgagor agrees shall be reasonable notice of any sale or disposition of the Collateral; (c) The right to require Mortgagor, upon request of Mortgagee, to assemble and make the Collateral available to Mortgagee at a place reasonably convenient to Mortgagor and Mortgagee; and (d) The right to notify account debtors, and demand and receive payment therefrom.

To effectuate the rights and remedies of Mortgagee upon default, Mortgagor does hereby irrevocably appoint Mortgagee attorney-in-fact for Mortgagor, with full power of substitution to sign, execute, and deliver any and all instruments and documents and do all acts and things to the same extent as Mortgagor could do, and to sell, assign, and transfer any collateral to Mortgagee or any other party.

27.     **Access to Property; Operation of Property by Mortgagee.**  Upon the occurrence of an Event of Default or at any time thereafter, in addition to all other rights herein conferred on the Mortgagee, the Mortgagee (or any person, firm or corporation designated by the Mortgagee) may, but will not be obligated to, enter upon and, without taking possession thereof, inspect or cause to be inspected, the Mortgaged Property, including testing for hazardous substances, and/or to take possession of any or all of the Mortgaged Property, exclude the Mortgagor therefrom, and hold, use, administer, manage and operate the same to the extent that the Mortgagor could do so, without any liability to the Mortgagor resulting therefrom; and the Mortgagee may collect, receive and receipt for all proceeds accruing from such operation and management, make repairs and purchase needed additional property, and exercise every power, right and privilege of the Mortgagor with respect to the Mortgaged Property.

28.     **Waiver of Automatic Stay.**  Mortgagor further agrees that in the event it or its shareholders or creditors (if applicable) shall (I) file with any bankruptcy court of competent jurisdiction or be the subject of any petition for relief under Title 11 of the United States Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the United States Code, as amended; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Mortgagee shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the United States Code, as amended or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided in this Mortgage or any other agreement, and as otherwise provided by law, and Mortgagor hereby waives the benefits of such automatic stay and consents and agrees to raise no objection to such relief.

29.     **Waiver and Election.**  No failure or delay of Mortgagee to exercise any option herein given to declare the maturity of the debt hereby secured shall be taken or construed as a waiver of its right to exercise such option or to declare such on the part of Mortgagor. The procurement of insurance or the payment of taxes or other liens, debts, or charges by Mortgagee shall not be taken or construed as a waiver of its right to declare the maturity of the indebtedness hereby secured by reason of the failure of Mortgagor to procure such insurance or to pay such taxes, debts, liens, or charges.

## MISCELLANEOUS PROVISIONS

30.     **Mortgagor to Pay Attorneys' Fees and Costs.**  Mortgagor agrees to pay all costs, including reasonable attorneys' fees, incurred or paid by Mortgagee in collecting or securing, or attempting to collect or secure, the indebtedness secured hereby, the Note, or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien on the Mortgaged Property, unless this Mortgage is herein expressly made subject to any such lien; and/or all costs incurred in the foreclosure of this Mortgage, either under the power of sale stated herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred or paid by Mortgagee shall be a part of the debt secured by

9

the Mortgage, in addition to the indebtedness specially secured hereby: it shall bear interest from the date it is paid or incurred at the rate set forth in the Note plus two percentage points (2%); and it shall be at once due and payable. All expenses incurred by Mortgagee, including attorneys' fees, in compromising, adjusting, or defending against lien claims or encumbrances sought to be fixed upon the property hereby conveyed, whether such claims or encumbrances be valid or not, shall become a part of the debt hereby secured.

If Mortgagee shall be made a party to any suit involving the title to the property hereby conveyed and employs an attorney to represent it therein, or if Mortgagee employs an attorney to assist in settling or removing any cloud on the title to the property hereby conveyed that purports to be superior to the lien of this Mortgage in any respect, Mortgagor will pay to Mortgagee, when the same becomes due, such attorney's fee as may be reasonable for such services, and if such fee is paid or incurred by Mortgagee, the same shall be secured by the lien of this Mortgage in addition to the indebtedness specially secured hereby, and shall bear interest from the date it is paid or incurred at the rate set forth in the Note plu31. Modifications or Extensions Not Affecting Security. The parties expressly agree that: (a) any indebtedness at any time secured hereby may be extended, rearranged or renewed, and that any part of the security herein described may be waived or released without in any way altering, varying, or diminishing the force, effect, or lien of this instrument; (b) this instrument shall continue as a first lien on all of said lands and Mortgaged Property and other property and rights covered hereby and will not be expressly released until all sums with interest and charges hereby secured are fully paid; (c) no other security now existing or hereafter taken to secure the payment of said indebtedness or any part thereof shall in any manner be impaired or affected by the execution of this instrument; (d) no security subsequently taken by Mortgagee or other holder or holders of said indebtedness shall in any manner impair or affect the security given by this instrument; and (e) all security for the payment of said indebtedness or any part thereof shall be taken, considered and held as cumulative.

32.  **Covenant Against Sale, Lease or Transfer.** In the event of any change in the present ownership of all or any part of the Mortgaged Property or any interest therein, either by affirmative action, by operation of law or otherwise, or in the event any further encumbrance of the Mortgaged Property is created without Mortgagee's prior written approval, Mortgagee may, at its option, declare the indebtedness due and payable in full.

33.  **Books and Records.** Mortgagor shall keep and maintain at all times full, true and accurate books of accounts and records, adequate to reflect correctly the results of the operation of the Mortgaged Property. Upon request of Mortgagee, Mortgagor shall furnish to Mortgagee (I) within ninety (90) days after the end of Mortgagor's fiscal year a balance sheet and statement of income and expenses, both in reasonable detail and form satisfactory to Mortgagee and certified by a independent certified public accountant, and (ii) within ten (10) days after request therefor from Mortgagee, a rent schedule of the Mortgaged Property, certified by the Mortgagor, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date and the rent paid.

34.  **Liquidation of other Collateral.** If the indebtedness secured hereby, or any other debt owned by Mortgagor to Mortgagee, is now or hereafter further secured by security interest or mortgages, pledges, contacts of guaranty, assignments of leases or other securities, the Mortgagee may, at its option, exhaust any one or more of said securities and the security hereunder, either concurrently or independently, and in such order as the Mortgagee may determine.

35.  **Estoppel Affidavits.** Within ten (10) days after written request from the Mortgagee, Mortgagor shall furnish a written statement, duly acknowledged, setting forth the unpaid principal of and interest on the Note and other Debt and whether or not any offsets or defenses exist against any principal and interest.

36.  **Notices.** Wherever and whenever in this Mortgage it shall be required or permitted that notice or demand be given or served by any party, such notice or demand shall be given or served, and shall not be deemed to have been given or served unless in writing and forwarded by registered or certified mail, return receipt requested, or by overnight professional courier, addressed to the addresses of the parties indicated at the beginning of this Mortgage, or to such other address as either party may have given to the other by notice as hereinabove provided. Such notice shall be deemed given and shall be effective upon deposit in the United States Mail postage prepaid or into the hands of an overnight professional courier, all charges prepaid, addressed to the above addresses or to such other address as either party may have given to the other by notice as hereinabove provided. Actual notice to Mortgagors or Mortgagee shall always be effective no matter how given or received.

37.  **Assignment of Liabilities.** If at any time or times by sale, assignment, negotiation, pledge, or otherwise, Mortgagee transfers any or all of the indebtedness or instruments secured hereby, such transfer shall, unless otherwise specified in writing, carry with it Mortgagee's rights and remedies hereunder with respect to such indebtedness or instruments transferred, and the

transferee shall become vested with such rights and remedies whether or not they are specifically referred to in the transfer. If and to the extent Mortgagee retains any of such indebtedness or instruments, Mortgagee shall continue to have the rights and remedies herein set forth with respect thereto.

38.   **Meaning of Particular Terms.**  Singular or plural words used herein to designate the Mortgagor shall be construed to refer to the maker or makers of this Mortgage, whether one or more persons or a corporation, and all covenants and agreements herein contained shall bind the successors and assigns of the Mortgagor, and every option, right, and privilege herein reserved or secured to Mortgagee shall inure to the benefit of its successors and assigns.  The headings of the sections hereof are for convenience or reference only, and are not to be considered a part hereof, and shall not limit or affect any of the terms hereof.

39.   **Enforceability; Remedies Cumulative.**  The unenforceability or invalidity of any provision or provisions of this Mortgage shall not render any other provision or provisions herein contained unenforceable or invalid.  All rights or remedies of Mortgagee hereunder are cumulative and not alternative, and are in addition to those provided by law.

IN WITNESS WHEREOF, the party constituting Mortgagor has hereto set his hand and seal hereto effective as of the date first above written.

NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)

BY: _____
(Its Authorized Agent)

STATE OF ALABAMA
COUNTY OF JEFFERSON

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _Lester L_ _Robinson_ , whose name as Authorized Agent of NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation, (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.) is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer, and with full authority, executed the same voluntarily, as an act of said corporation, acting in its capacity as aforesaid.

Given under my hand and official seal, this the _26_ day of August, 1998.

_____
NOTARY PUBLIC
My Commission Expires: _6/7/99_

THIS INSTRUMENT PREPARED BY AND AFTER
RECORDATION SHOULD BE RETURNED TO:
William B. Hairston, III
ENGEL, HAIRSTON & JOHANSON, P.C.
109 North 20th Street, Fourth Floor
P.O. Box 370027
Birmingham, Alabama  35237
(205) 328-4600

*11*

EXHIBIT "A"
TO
MORTGAGE
ASSIGNMENT OF RENTS AND LEASES
AND SECURITY AGREEMENT
FINANCING STATEMENT (UCC-1)
CONSTRUCTION LOAN AGREEMENT
AFFIDAVIT AND INDEMNITY
HAZARDOUS SUBSTANCES INDEMNIFICATION AND WARRANTY AGREEMENT


Borrower: NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious
          corporation
Lender:   SOUTHTRUST BANK, National Association


A parcel of land situated in the NE 1/4 of the SW 1/4 of Section 1, Township 16 South, Range 2 West, being located in Jefferson County, Alabama, and being more particularly described as follows:

Begin at the NE corner of the NE 1/4 of the SW 1/4 of said Section 1, and run Southerly along the East line thereof for 264.98 feet; thence turn 44 degrees 57 minutes right and run Southwesterly for 163.02 feet; thence turn 99 degrees 58 minutes left and run Southeasterly for 218.97 feet to a point on the Westerly right-of-way of Tarrant-Pinson Highway No. 79; thence turn 90 degrees right and run Southwesterly along said right-of-way line for 687.83 feet; thence turn 90 degrees right and run Northwesterly for 888.49 feet; thence turn 77 degrees 19 minutes right and run Northeasterly for 332.16 feet; thence turn 24 degrees 05 minutes left and run Northerly for 136.50 feet; thence 19 degrees 18 minutes right and run Northeasterly for 144.01 feet to a point on the North line of said 1/4-1/4 section; thence turn 73 degrees 50 minutes right and run Easterly along the North line of said 1/4-1/4 section for 893.19 feet to the point of beginning.

ex.a 8/19/98 9:22AM

200003 / 4101

## AMENDMENT

### TO

### MORTGAGE
### ASSIGNMENT OF RENTS AND LEASES,
### AND SECURITY AGREEMENT

**THIS AMENDMENT** amends that certain Mortgage, Assignment of Rents and Leases and Security Agreement (hereinafter "Mortgage") executed on August 21, 1998 by NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.) (hereinafter "Borrower") in favor of SOUTHTRUST BANK, National Association (hereinafter "Bank").

**WHEREAS,** the Mortgage is recorded as Instrument 9810/9516 in the Office of the Judge of Probate of Jefferson County, Alabama, and pertains to the property described on Exhibit "A" attached hereto.

**WHEREAS,** the Mortgage secured a Note in the original principal amount of $1,500,000.00 and all renewals and extensions thereof.

**WHEREAS,** upon the recordation of the Mortgage a mortgage tax of $2,250.00 was paid.

**WHEREAS,** Borrower has requested Bank to lend Borrower an additional $400,000.00, and Bank is agreeable to making such loan, provided Borrower, among other things enters into this Amendment, and causes this additional advance to be secured by the Mortgage.

**NOW THEREFORE,** in consideration of the terms and conditions contained herein, and to induce Bank to lend additional monies to Borrower, the Mortgage is hereby amended as follows:

1). Henceforth the Mortgage shall specifically secure not only the $1,500,000.00 Note executed in connection therewith, and all renewals and extensions thereof, but also an additional advance or loan of $400,000.00 made in connection herewith to Borrower, and all the interest thereon.

2). The term "Debt" as used in the Mortgage shall be defined to mean not only the Debt evidenced by the $1,500,000.00 Note executed on August 21, 1998 and all interest thereon, and all extensions and renewals thereof, but also the $400,000.00 advance or loan being made in connection herewith, all interest thereon, and all extensions, and renewals thereof.

AMEND.mtg 3/6/00 1:34PM

All of the terms and provisions of the Mortgage not specifically amended herein, are hereby reaffirmed, ratified and restated. This Amendment amends the Mortgage and is not an novation thereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals effective this _7_ day of March, 2000.

NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.)

By: _____

(Its Authorized Agent)

STATE OF ALABAMA    )
JEFFERSON COUNTY    )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _Lester L. Robinson_ whose name as Authorized Agent of NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation (also known as NEW COVENANT FELLOWSHIP CHURCH, INC. and NEW COVENANT FELLOWSHIP, INC.), is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he/she, as such authorized agent, and with full authority, executed the same voluntarily, as an act of said corporation, acting in his/her capacity as aforesaid.

Given under my hand and official seal, this the _7_ day of March, 2000.

_____
NOTARY PUBLIC
My Commission Expires: _6/7/03_

THIS INSTRUMENT PREPARED BY AND AFTER RECORDATION SHOULD BE RETURNED TO:
William B. Hairston III
ENGEL HAIRSTON & JOHANSON, P.C.
4th Floor, 109 North 20th Street
Birmingham, Alabama 35203
(205) 328-4600

AMEND.mtg 3/6/00 1:34PM

2

EXHIBIT "A"
TO
AMENDMENT
to
MORTGAGE
ASSIGNMENT OF RENTS AND LEASES
AND SECURITY AGREEMENT
AFFIDAVIT AND INDEMNITY


Borrower:    NEW COVENANT FELLOWSHIP CHURCH, a non-profit religious corporation
Lender:      SOUTHTRUST BANK, National Association


A parcel of land situated in the NE 1/4 of the SW 1/4 of Section 1, Township 16 South, Range 2 West, being located in Jefferson County, Alabama, and being more particularly described as follows:

Begin at the NE corner of the NE 1/4 of the SW 1/4 of said Section 1, and run Southerly along the East line thereof for 264.98 feet; thence turn 44 degrees 57 minutes right and run Southwesterly for 163.02 feet; thence turn 99 degrees 58 minutes left and run Southeasterly for 218.97 feet to a point on the Westerly right-of-way of Tarrant-Pinson Highway No. 79; thence turn 90 degrees right and run Southwesterly along said right-of-way line for 687.83 feet; thence turn 90 degrees right and run Northwesterly for 888.49 feet; thence turn 77 degrees 19 minutes right and run Northeasterly for 332.16 feet; thence turn 24 degrees 05 minutes left and run Northerly for 136.50 feet; thence 19 degrees 18 minutes right and run Northeasterly for 144.01 feet to a point on the North line of said 1/4-1/4 section; thence turn 73 degrees 50 minutes right and run Easterly along the North line of said 1/4-1/4 section for 893.19 feet to the point of beginning.

# EXHIBIT 4

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

WELLS FARGO TOWER
420 20TH STREET NORTH
SUITE 1400
BIRMINGHAM, ALABAMA 35203
PHONE    205 328 0480
FAX      205 322 8007

www bakerdonelson com

ERIC L. PRUITT
**Direct Dial:** 205.244.3836
**Direct Fax:** 205.488.3836
**E-Mail Address:** epruitt@bakerdonelson.com

July 19, 2012

<u>**VIA FEDERAL EXPRESS**</u>

New Covenant Fellowship Church
5050 Pinson Valley Parkway
Birmingham, Alabama 35215

### NOTICE OF DEFAULT

**Re:    Loan (the "Loan") in the original amount of $2,513,257.27 from Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, National Association, successor by merger to SouthTrust Bank ("Lender") to New Covenant Fellowship Church ("Borrower")**

Dear Borrower:

This firm represents Lender in connection with the Loan. Lender is the owner and holder of the following documents evidencing, securing or otherwise relating to the Loan (collectively, the "<u>Loan Documents</u>"):

1.    That certain Promissory Note dated December 18, 2008, executed by Borrower in favor of Lender in the stated principal amount of $2,513,257.27 to evidence the Loan, which consolidated, renewed, extended, increased, and/or modified that certain Promissory Note dated April 28, 2006, executed by Borrower in favor of Lender in the stated principal amount of $2,163,809.99, and that certain Promissory Note dated February 7, 2006 executed by Borrower in favor of Lender in the stated principal amount of $50,000.00 (as assumed, amended and modified from time to time, collectively, the "Note");

2.    That certain Mortgage, Assignment of Rents and Leases, and Security Agreement dated August 21, 1998, executed by Borrower in favor of Lender, and recorded in the Office of the Judge of Probate for Jefferson County, Alabama on August 21, 1998, at Instrument No. 9810/9516, as amended by that certain Amendment to Mortgage, Assignment of Rents and Leases, and Security Agreement dated March 7, 2000, executed by Borrower in favor of Lender, and recorded in the Office of the Judge of Probate for Jefferson County, Alabama on March 7, 2000, at Instrument No. 200003/4101 (as assumed, amended and modified from time to time, the "Mortgage");

New Covenant Fellowship Church
July 19, 2012
Page 2

3.      That certain Extension Agreement dated June 10, 2010, executed by and between
        Borrower and Lender (as assumed, amended, and modified from time to time, the
        "First Extension Agreement");

4.      That certain Second Extension Agreement dated November 2, 2011, executed by
        and between Borrower and Lender (as assumed, amended, and modified from
        time to time, the "Second Extension Agreement"); and

5.      All other documents, instruments and agreements, including without limitation,
        UCC-1 Financing Statements evidencing, referring to, securing, or relating to the
        Loan.

All capitalized terms used herein and not otherwise defined shall have the meanings set
forth in the Loan Documents. All real and personal property securing the Loan is referred to
herein as the "Collateral."

Events of Default have occurred and are continuing under the Loan Documents,
including, without limitation, Borrower's breach of Section 32 of the Mortgage by transferring
title to the Collateral (the "Default") to the Pentecostal Temple, LLC Church of God in Christ
(the "Transferee"). Borrower completed such transfer without Lender's consent. Furthermore,
Lender has not consented to allow Transferee to assume the Loan and any such purported
assumption is void. Lender hereby demands that Borrower take all actions necessary, including
legal action if required, to regain title to the Collateral. If Borrower fails or refuses to take such
action, please be advised that Lender will take such actions it deems necessary to preserve
Lender's interest in the Collateral. If Borrower received any proceeds as a result of such transfer,
Lender hereby demands that Borrower surrender any such proceeds to Lender to be applied to
the Loan Obligations.

Borrower's transfer of the Collateral constitutes a breach of the Loan Documents. Due to
the Default, Lender has the right to exercise its remedies under the Loan Documents, including,
without limitation, demanding immediate payment in full of the Loan. You are hereby further
notified that due to the Default, Borrower's license to collect and receive any Rents (as defined in
the Loan Documents) granted under the Loan Documents is hereby revoked. Under and
pursuant to the Loan Documents, Lender is immediately entitled to possession of all Rents
collected or received by Borrower from and after the date of this letter. Lender hereby demands
a full and complete accounting of all Rents received from and after the date of this letter, and the
remittance of all Rents in excess of ordinary operating expenses.

All of Lender's claims, demands and accruals regarding the above-referenced Loan
Obligations, whenever made, whether for principal, interest or otherwise, are intended to comply
in all respects, both independently and collectively, with applicable usury laws, and are
accordingly limited so that applicable usury laws are not violated.

Lender reserves the right to exercise, in such order as Lender elects, any one or more of
the remedies available to Lender pursuant to the Loan Documents or otherwise at law or in

New Covenant Fellowship Church
July 19, 2012
Page 3

equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Any negotiations between Borrower and Lender shall not constitute a waiver of Lender's right to exercise its rights and remedies under the Loan Documents or otherwise at law or in equity, including, but not limited to, those described in this letter. Any such waiver shall not be effective unless set forth in writing, duly executed by an authorized representative of Lender. Borrower shall not be entitled to rely upon any verbal statements made or purported to be made by or on behalf of Lender in connection with any alleged agreement by or on behalf of Lender to refrain from exercising any of its rights under the Loan Documents or otherwise at law or in equity. Please be advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that default or any other default.

Payment to Lender of less than all loan obligations due and owing under the Note, together with all interest accrued thereon, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of the Debt. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction. Lender may accept any such payment or turnover of the collateral securing the Loan without prejudice to its rights to receive the balance of all Loan Obligations due under the terms of the Loan Documents or to pursue its remedies.

Please note that we have no obligation or duty to inform Borrower of Lender's intentions to exercise its rights and remedies under the Loan Documents. We are, however, doing so in this letter as an accommodation to Borrower. Borrower shall not be entitled to expect notice in the future of Lender's elections or specifications under any of the Loan Documents by reason of Lender's election to provide notices and specifications in this letter.

**THIS FIRM AND LENDER ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE LOAN DOCUMENTS AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

Neither this letter nor any statement by or on behalf of Lender as to the amount due and owing under the Loan Documents, (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents or otherwise at law or in equity; or (ii) shall constitute an accord and satisfaction or waiver of any rights of Lender under the Loan Documents.

B DJF01 1050661 v3
1039341-000206

New Covenant Fellowship Church
July 19, 2012
Page 4

Please contact the undersigned immediately if you have any questions concerning the matters contained in this letter. Your prompt attention to these serious matters is appreciated.

You are further notified that Lender will strictly enforce the Loan Documents in accordance with their respective terms. Please govern yourselves accordingly.

Sincerely,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

Eric L. Pruitt

cc:     Rob Dunn
        Robert V. Townes III

B DJF01 1050661 v3
1039341-000206

# EXHIBIT 5

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

WELLS FARGO TOWER
420 20TH STREET NORTH
SUITE 1400
BIRMINGHAM, ALABAMA 35203
PHONE:   205.328.0480
FAX:       205.322.8007

www.bakerdonelson.com

ERIC L. PRUITT
Direct Dial: 205.244.3836
Direct Fax: 205.488.3836
E-Mail Address: epruitt@bakerdonelson.com

July 19, 2012

**VIA CERTIFIED MAIL**

Pentecostal Temple, LLC Church of God in Christ
c/o Rev. Hosea Agee
P.O. Box 13831
Birmingham, Alabama 35202

> Re:   **Transfer of certain property securing a loan (the "Loan") from Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, National Association, successor by merger to SouthTrust Bank ("Lender") to New Covenant Fellowship Church ("Borrower")**

Dear Rev. Agee:

This firm represents Lender in connection with the Loan.   All documents, instruments and agreements evidencing, referring to, securing, or relating to the Loan are referred to herein, collectively, as the "Loan Documents." The Loan is secured by, among other things, certain real property Mortgage, Assignment of Rents and Leases, and Security Agreement dated August 21, 1998, executed by Borrower in favor of Lender, and recorded in the Office of the Judge of Probate for Jefferson County, Alabama on August 21, 1998, at Instrument No. 9810/9516, as amended by that certain Amendment to Mortgage, Assignment of Rents and Leases, and Security Agreement dated March 7, 2000, executed by Borrower in favor of Lender, and recorded in the Office of the Judge of Probate for Jefferson County, Alabama on March 7, 2000, at Instrument No. 200003/4101 and located at or near 5050 Pinson Valley Parkway, Birmingham, Alabama 35215 (the "Collateral").   Lender has learned from Borrower that Borrower has transferred the Collateral to the Pentecostal Temple, LLC Church of God in Christ (the "Transferee"). Borrower completed such transfer without Lender's consent.   Furthermore, Lender has not agreed to allow Transferee to assume the Loan and any such purported assumption is void.

Please be advised that Borrower's transfer of the Collateral to Transferee constitutes a breach of the Loan Documents (the "Default").   Due to the Default, Lender has the right to exercise its remedies under the Loan Documents and at law or in equity, including, without limitation, the right to seek possession of the Collateral via foreclosure or other legal process.   Additionally, please be advised that Lender will take such actions it deems necessary to preserve Lender's interest in the Collateral.

Lender reserves the right to exercise, in such order as Lender elects, any one or more of the remedies available to Lender pursuant to the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and

B JFR01 1051414 v2
1039341-000206

ALABAMA   •   FLORIDA   •   GEORGIA   •   LOUISIANA   •   MISSISSIPPI   •   TENNESSEE   •   TEXAS   •   WASHINGTON, D.C.

Hosea Agee
July 19, 2012
Page 2

remedies.  Please be advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that default or any other default.

Please note that we have no obligation or duty to inform Transferee of Lender's intentions to exercise its rights and remedies under the Loan Documents.  We are, however, doing so in this letter as an accommodation to Transferee.  Transferee shall not be entitled to expect notice in the future of Lender's elections or specifications under any of the Loan Documents by reason of Lender's election to provide notices and specifications in this letter.

Please contact the undersigned immediately if you have any questions concerning the matters contained in this letter.  Your prompt attention to these serious matters is appreciated.  You are further notified that Lender will strictly enforce the Loan Documents in accordance with their respective terms. Please govern yourselves accordingly.

Sincerely,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

Eric L. Pruitt

cc:     Rob Dunn
        New Covenant Fellowship Church

B JFR01 1051414 v2
1039341-000206

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, National Association, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| NEW COVENANT FELLOWSHIP, CHURCH, INC., and PENTECOSTAL TEMPLE, LLC, d/b/a PENTECOSTAL TEMPLE CHURCH OF GOD IN CHRIST, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF JESSE D. SLATON

1.      My name is Jesse D. Slaton.  The statements contained herein are based upon my personal knowledge, and I am competent to testify as to each matter on which I am offering evidence herein.

2.      I am adult resident of the State of Alabama.

3.      I am a Member and Director of Warren Averett LLC ("Warren Averett").  By virtue of my position, I have personal knowledge of the facts and statements testified to herein, which are true and correct to the best of my knowledge.

4.     Warren Averett is the largest locally-owned and operated CPA firm in Alabama.

5.     Warren Averett has over thirty years of experience in working with distressed businesses and properties, primarily through its Turnaround Consulting & Restructuring Advisory Services Group (the "Turnaround and Restructuring Group").

6.     Warren Averett and its employees have specific experience with commercial and residential real estate management.   This experience includes protecting and maintaining commercial and residential real estate and any personal property located therein, and brokering the sale of receivership assets.

7.     In addition, Warren Averett has served as court-appointed receiver in several matters in the State of Alabama, including several in federal court.  Warren Averett is familiar with the responsibilities of a court-appointed receiver, including the reporting requirements.

8.     Warren Averett has the expertise and experience necessary to manage the Collateral described in the Motion to Appoint Receiver filed in this action.

9.     Warren Averett is willing to serve as the Receiver as requested in the Motion filed contemporaneously herewith and accepts the terms of the proposed Receiver Order attached to the Motion.

I declare under penalty of perjury that the foregoing is true and correct.

2

Executed this 8th day of August, 2012.

JESSE D. SLATON